**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

NORA HERNANDEZ,

Plaintiff,

vs.

JOHN MORRELL & CO., d/b/a
CURLY'S FOODS, and SMITHFIELD
FOODS, INC.,

Defendants.

No. C 17-4033-MWB

**OPINION AND ORDER
REGARDING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT**

_____

**TABLE OF CONTENTS**

I.    INTRODUCTION............................................................................2
      A.   *Factual Background* .............................................................2
           *1.    The parties*...............................................................2
           *2.    The alleged safety violations* .............................................3
           *3.    The termination*...........................................................6
      B.   *Procedural Background* .........................................................7
           *1.    The lawsuit and the removal* ..............................................7
           *2.    The summary judgment motion*..............................................7
      C.   *Arguments Of The Parties* ......................................................8
           *1.    The defendants' opening argument*.........................................8
           *2.    Hernandez's response* ....................................................9
           *3.    The defendants' reply*....................................................11

II.   LEGAL ANALYSIS .......................................................................12
      A.   *Applicable Standards*..........................................................12
           *1.    Summary judgment standards* .............................................12
           *2.    Standards for retaliatory discharge claims* .............................14
      B.   *Application Of The Standards*..................................................16

III.  CONCLUSION ...........................................................................22

An employee at a meat-processing plant claims that she was terminated, in violation of Iowa public policy, in retaliation for making continuing claims for worker's compensation benefits for a shoulder injury. On a motion for summary judgment, however, her employer and its corporate parent contend that the undisputed evidence shows that the employee was terminated for her second safety violation in just four months. I must decide whether the employee has generated a jury question on the alleged retaliatory motive for her termination.

## I.    INTRODUCTION
### A.    *Factual Background*

This statement of the factual background does not necessarily set out all the parties' factual allegations in support of and resistance to the defendants' Motion For Summary Judgment. Rather, it focuses on the key facts to put in context the parties' disputes. Unless otherwise indicated, the following facts are undisputed.

### 1.    *The parties*

Plaintiff Nora Hernandez was employed as a production worker at the Curly's Foods pork processing plant in Sioux City, Iowa, from August 2000 until April 24, 2015. Defendant John Morrell & Co., which is a wholly-owned subsidiary of defendant Smithfield Foods, Inc., does business as Curly's Foods and owns and operates the pork processing plant where Hernandez was employed. That plant employed approximately 620 people at the time of Hernandez's termination. There was no union at the plant.

For the last seven years of her employment, Hernandez operated a band saw, which she used to cut slabs of pork ribs to customer specifications. Prior to January 2015, Hernandez had never been disciplined for any unsafe conduct at work. Hernandez

was counseled in April 2013, however, that her supervisors were concerned that she could not keep up with the expected pace of production for a saw operator, owing to the manner in which she performed her job. The defendants contend that this fact is immaterial, except to the extent that the memorialization of the counseling stresses that Hernandez was not being asked to go faster, because doing so would be a safety risk, and it shows that the defendants were devoting time to helping Hernandez produce acceptable product at an efficient standard.

In December 2013, Hernandez injured her right shoulder and left knee when she slipped on the stairs at work. She was initially seen by a nurse practitioner for that injury, but she was later referred to an orthopedic surgeon. The orthopedist treated Hernandez conservatively from March 2014, through October 2014, during which time, Hernandez was placed on light duty. The defendants contend that light duty assignments for employees with work-related injuries were commonplace, but Hernandez admits only that she was on light duty at various times and that she was aware of other employees who had been on light duty. In October 2014, Hernandez's treating physician released her to full duty. Hernandez asserts that, between October 14, 2014, and January 15, 2015, she continued to experience pain in her right shoulder while she was performing her regular job, but the defendants contend that this fact is immaterial, because Hernandez had been released to full duty, and her supervisors had no reason to believe that she could not fully perform her duties.

## 2. *The alleged safety violations*

In January 2015, Hernandez cut her right middle finger on the band saw that she was operating. The defendants assert that, based on an investigation conducted at the workplace, they determined that Hernandez reached around to the back of the saw and attempted to retrieve a stuck piece of meat, instead of stopping the machine and using a meat hook to release the piece of meat that was stuck, as required by proper procedures.

Hernandez admits that this was the defendants' determination, but she denies that the determination was correct or that it was based on an investigation. Rather, she contends that she did not have time to shut off her saw before her hand was pulled into the blade of the saw, which the defendants dispute. Hernandez received medical treatment for her cut and was placed on light duty for several weeks as a result of this injury. In addition, because the defendants determined that Hernandez's injury resulted from her failure to follow safety protocols, the defendants gave Hernandez a three-day suspension. Hernandez disputed the imposition of any disciplinary action for this incident at the time. The defendants contend that the safety violation in January 2015 was serious enough to warrant termination, but that they chose not to take that step at that time. Hernandez admits only that she was not terminated at that time. Hernandez asserts that, under the Curly's Foods policy, following imposition of a suspension due to the January 2015 incident, she was barred from seeking to transfer into another job for a year. The defendants contend that this fact is immaterial, because Hernandez never indicated any interest in transferring to another job. Hernandez returned to work on light duty after this incident, but she was working without restrictions from March 20, 2015, until April 20, 2015.

Hernandez contends that, from March 20 to March 31, 2015, she continued to experience shoulder pain while working at her regular job as a saw operator, but the defendants contend that this fact is immaterial, because the defendants had no reason to believe that Hernandez could not fully perform her job and because there is no evidence that Hernandez told her supervisors that she was continuing to experience pain. In March 2015, the defendants' worker's compensation carrier sent Hernandez to another orthopedic surgeon to get a second opinion about her ongoing shoulder pain. The second surgeon disagreed with the conservative treatment that Hernandez had been receiving thus far and, instead, recommended that she have surgery on her shoulder, which would

be scheduled "over the next couple of weeks." That information was transmitted to the nurse at the plant on or about March 31, 2015, after Hernandez returned from her consultation with the physician. Kathy Peterson, who was the Human Resources Manager for the Curly's Foods plant, acknowledges that, in the ordinary course of business, she would have learned from the nurse about the fact that Hernandez's doctor had recommended that Hernandez undergo surgery, but Ms. Peterson testified that she did not recall being told that surgery had been recommended for Hernandez. Ms. Peterson was not responsible for securing approval for that surgery or managing the logistics associated with the doctor's recommendation. Hernandez continued to work at her regular job after the recommendation that she have surgery, although she contends that she went to the plant nurse's office on an almost daily basis to apply ice to her shoulder. The defendants assert that they understood that Hernandez had been released to perform her regular job at this time and that she did not tell her supervisors that she could not do it.

On April 20, 2015, Hernandez became frustrated for reasons that she states included worsening pain in her shoulder; the speed of the line, which had not changed despite her complaint about it to a lead employee; and the conduct of a new employee, Ana Garcia, who was, in Hernandez's view, not properly laying out slabs of ribs on the conveyor belt. Hernandez believed that Ms. Garcia was allowing some of the slabs to double up, instead of laying them out separately. The protocol for situations in which slabs are doubling up is for the band saw operator to set the extra slab of ribs on the operator's table, to be returned to the vat and re-placed on the conveyor belt. On this day, however, Hernandez admits that she picked up a slab of ribs and threw it back across the conveyor belt toward the vat. The parties dispute whether a slab of ribs weighs between eight and eleven pounds or between two and three pounds and how close the slab thrown by Hernandez came to any other employee, including Ms. Garcia. The

defendants assert that throwing the slab of ribs around saw operators, other employees, and equipment was unsafe. Hernandez disputes whether tossing the slab of ribs was unsafe conduct, but she testified, "I don't know why I did this" and "I got frustrated." Ms. Garcia filed a complaint with Human Resources in which she said that she felt threatened by Hernandez's conduct.

### 3. The termination

Ms. Peterson conducted an investigation into Ms. Garcia's complaint about Hernandez throwing the slab of ribs. All supervisors confirmed that Hernandez had been trained in, and was fully aware of, the procedures for separating out excess slabs of ribs that came down the conveyor belt. The defendants contend that there were no extenuating circumstances for this incident, which followed Hernandez's prior safety violation by just a few months. Based on the two safety violations, and with input from Senior Human Resources Directors and Hernandez's managers, Ms. Peterson made the decision to terminate Hernandez's employment on April 24, 2015. The defendants contend that no one involved in the termination decision, other than Ms. Peterson, could have known about the doctor's recommendation that Hernandez have surgery, and that no one involved gave any consideration to Hernandez's worker's compensation claims or the status of her injury, but Hernandez contends that Ms. Peterson knew about the surgery recommendation at the time of the termination.

Hernandez alleges that, after her termination, the defendants denied her worker's compensation healing period benefits based on their claim that she had engaged in gross misconduct, characterized as "work-place violence," but an arbitration decision by the Iowa Worker's Compensation Court rejected that argument. The defendants contend this allegation is immaterial, because the decision to deny worker's compensation healing period benefits was made by ESIS, its worker's compensation administrator, not by any of the defendants; the defendants took no such position before the Iowa Worker's

Compensation Court, although ESIS did; and the arbitration decision rejected the argument, but held that ESIS's position was, nevertheless, "fairly debatable." Also, it is undisputed that, after her termination, Hernandez received further treatment authorized by the defendants' worker's compensation insurance carrier, including shoulder surgery on September 23, 2015.

## B.    Procedural Background

### 1.    The lawsuit and the removal

On April 18, 2017, Hernandez filed suit in the Iowa District Court for Woodbury County against John Morrell, doing business as Curly's Foods, and Smithfield Foods. In her state court Petition, Hernandez asserted a single claim of retaliatory discharge in violation of public policy, based on allegations that she was terminated for suffering a workplace injury, for making a claim for worker's compensation benefits, and/or for requesting medical care.  Hernandez seeks compensatory and punitive damages, plus interest, costs, and such other relief as may be appropriate.  The defendants removed the action to this federal court on May 11, 2017, on the basis of diversity jurisdiction, pursuant to 28 U.S.C. §§ 1332 and 1441(b).  On May 22, 2017, the defendants filed a joint Answer denying Hernandez's claim and asserting several affirmative defenses.  A jury trial in this matter is currently set to begin on December 10, 2018.

### 2.    The summary judgment motion

On June 20, 2018, the defendants filed the Motion For Summary Judgment now before me.  Hernandez filed her Resistance on July 10, 2018, and the defendants filed their Reply on July 17, 2018.  On July 26, 2018, the defendants were granted leave to file their Second Supplemental Appendix In Support Of Summary Judgment for the sole purpose of providing a complete/corrected version of a hearing transcript.  The defendants' Second Supplemental Appendix was filed on July 27, 2018.

No party requested oral arguments on the defendants' Motion For Summary Judgment in the manner required by local rules. Moreover, I have found the parties' written submissions to be adequate for the disposition of this motion. Therefore, the defendants' Motion For Summary Judgment is deemed fully submitted on the parties' written submissions.

### C.     Arguments Of The Parties

#### 1.     The defendants' opening argument

In support of their Motion For Summary Judgment, the defendants argue that, to prevail, Hernandez must prove that a worker's compensation claim was the employer's "specific motivation" for the adverse action. Here, however, the defendants argue that there is no genuine issue of material fact that Hernandez was fired for a legitimate reason, which was a second safety violation within just a few months. The defendants argue that the record includes no evidence that they thought of Hernandez's worker's compensation claims as anything other than routine and that there is no evidence of comments or conduct on the part of managers that might suggest or reveal a retaliatory motive. They argue that Curly's Foods is a large pork processing operation in which work-related injuries are not uncommon; that there are comprehensive procedures and protocols in place for treating such injuries through the company's worker's compensation insurer; and that, if Curly's Foods retaliated against every worker who was treated for work-related injuries, it would have a very small workforce.

In contrast to the lack of evidence of any retaliatory motive, the defendants argue that the record contains substantial, undisputed evidence that Hernandez violated two important safety rules within a four-month period. They argue that Hernandez intentionally violated a safety rule on the second occasion after being told that another safety violation would result in her termination. The defendants contend that the

applicable case law supports the principle that employers are—and must be—permitted to enforce legitimate work rules, and that worker's compensation claims do not insulate employees from repercussions for violations of such rules. Indeed, the defendants argue that Hernandez rests her entire claim on the supposition that, once it became known that she needed surgery, her employer decided to get rid of her, but her supposition is not competent evidence and does not generate a genuine issue of material fact. The defendants argue that temporal proximity alone between an injury or claim and adverse employment action does not establish a retaliatory motive, and there is simply no evidence, here, that anyone took into account Hernandez's injury or worker's compensation claims history in deciding to terminate her. The defendants argue that, even if retaliation is one factor, but not the *determinative* factor, in the employer's decision to take adverse employment action, there is no liability for a discharge in violation of public policy under Iowa law.

### 2. *Hernandez's response*

In response, Hernandez argues that there is no dispute that she sustained a work-related injury to her right shoulder in December 2013 and another work-related injury to her finger in January 2015; no dispute that she pursued worker's compensation benefits for both injuries; and no dispute that she was fired on April 24, 2015. She does argue, however, that there are genuine issues of material fact concerning the cause of her discharge, which preclude summary judgment. She argues that those factual disputes arise, first, because the timing of her termination is suspect. She points out that her termination came just four weeks after she returned to full duties after a period of light duty, and just three weeks after she returned to the doctor with continuing complaints about her shoulder, the doctor recommended shoulder surgery, and she informed the plant nurse that she needed surgery, which the plant nurse passed on to Ms. Peterson. Thus, Hernandez contends, at the time of her termination, the defendants were aware of

the likelihood that she would need additional time off and require payment of healing period benefits. She also points out that the discharge came just six months after the resumption of her regular duties following roughly eleven months on light duty from her shoulder injury.

Second, Hernandez contends that, almost immediately after she cut her finger in January 2015, the defendants chose to impose a disciplinary suspension on her for an alleged safety violation. She argues that the timing of this action also suggests that it was imposed for sustaining a work-related injury and invoking worker's compensation protection, particularly where she contends that she did not fail to follow safety procedures, but simply did not have time to shut down the saw before she was injured. Hernandez contends that nothing in the disciplinary policies for Curly's Foods mandated a suspension for a first safety rule violation, but the defendants imposed such a suspension despite her prior spotless disciplinary record over fourteen years of employment. She argues that a jury could find that the defendants used the January discipline to set her up for discharge (or to force her to quit) in order to reduce its worker's compensation obligations toward her for the following reasons: the defendants knew she was having problems keeping up with the pace of production on her job on the band saw even before her injuries in December 2013 and January 2015; that she was continuing to have significant right shoulder pain; that she would not be able to bid out of her band saw job into another job that was less painful or difficult for her for a year after the disciplinary action in January 2015; and that discharging her (or forcing her to quit) would relieve the defendants of continuing worker's compensation obligations.

Hernandez argues that the circumstances of the April 20, 2015, incident are also suggestive of retaliatory intent. This is so, she argues, because she had made complaints to her supervisors prior to the incident about the pace of the line and the problem that day with feeding product onto the line, but to no avail; her shoulder was causing her

pain; her shoulder surgery had been recommended, but not yet scheduled; and she tossed a piece of meat toward the vat it came from in frustration; but the defendants refused to consider any of those mitigating factors. Instead, she argues, the defendants concluded that she had committed another alleged intentional safety violation and, despite no requirement for discharge for multiple safety violations in the written policies for Curly's Foods and the fact that no one was harmed in the incident, the defendants fired her. She also contends that, prior to this incident, the plant nurse had told her that she had forwarded the recommendation that she have surgery to Ms. Peterson, but Ms. Peterson had not yet given approval.

Finally, Hernandez argues that it is relevant that the defendants argued to the Iowa Worker's Compensation Court that they were entitled to cut off her healing period benefits, after her termination, because she had been terminated for "gross misconduct."

### 3. *The defendants' reply*

In their Reply, the defendants, first, challenge Hernandez's claim that the plant nurse told her that she was waiting to hear from Ms. Peterson about approval of the recommendation for Hernandez's surgery. The defendants contend that this statement from the nurse to Hernandez, is hearsay, that it has never been reported before, that it contradicts the nurse's contemporaneous notes, and that the nurse denies making it. Moreover, the defendants contend that it is nonsense, because neither Ms. Peterson nor any other employee at Curly's Foods had the authority to approve the surgery. Rather, they argue, only the worker's compensation administrator, ESIS, had that authority.

The defendants also argue that Hernandez's opinions about the validity of the determinations that she violated safety rules on two occasions are irrelevant, because the evidence establishes that the defendants had a good-faith belief that she had engaged in unsafe practices and discharged her on that basis. The defendants argue that the court cannot sit as a "super personnel department" to second-guess legitimate business

decisions, in the absence of competent evidence of pretext, but there is no such evidence, here. The defendants also contend that Hernandez's theory that she was "set up" for discharge is not supported by any competent evidence. They point out that, when they discovered that she was having trouble keeping up, even before her December 2013 injury, they committed to supporting and training her, not putting her at risk of injury or discharge. They also point out that there is no record evidence that Hernandez ever told any supervisor that she was in pain or needed an accommodation for her pain or other accommodation, such as a transfer to a different job. They also reiterate that the record shows that many employees at Curly's Foods have been treated for work-related injuries and returned to work.

## II.  LEGAL ANALYSIS

### A.  Applicable Standards

#### 1.  Summary judgment standards

Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact *and* that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, "[t]he movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex*, 477 U.S. at 323). In response,

"[t]he nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

When the parties have met their burdens, the district judge's task is as follows:

> "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, ––– U.S. ––––, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) quoting *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal quotations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). . . . . "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Ricci*, 129 S. Ct. at 2677, quoting *Matsushita*, 475 U.S. at 587, 106 S. Ct. 1348.

*Torgerson*, 643 F.3d at 1042-43.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 776 (8th Cir. 2012). However, summary judgment is particularly appropriate when only questions of law are involved, rather than factual issues that may or may not be subject to genuine dispute. *See, e.g., Cremona v. R.S. Bacon Veneer Co.*, 433 F.3d 617, 620 (8th Cir. 2006).

## 2. *Standards for retaliatory discharge claims*

The "governing law," here, *see Liberty Lobby*, 477 U.S. at 248, is the Iowa law prohibiting retaliation for asserting a worker's compensation claim. *See Melvin v. Car-Freshener Corp.*, 453 F.3d 1000, 1002 (8th Cir. 2006). As the Iowa Supreme Court recently explained, it first recognized the Iowa tort of retaliatory discharge in violation of public policy in the context of discharge for pursuing a worker's compensation claim and had subsequently expanded the categories of protected activities. *See Ackerman v. State*, 913 N.W.2d 610, 614-15 (Iowa 2018). The Iowa Supreme Court explained some time ago that "[a]n essential element of the claim is a showing concerning the employer's specific motivation in firing; it must appear that the discharge was prompted by the filing of the workers' compensation claim." *Sanford v. Meadow Gold Dairies, Inc.*, 534 N.W.2d 410, 412 (Iowa 1995) (citing *Smith v. Smithway Motor Xpress*, 464 N.W.2d 682, 685 (Iowa 1990); *Springer v. Weeks & Leo Co.*, 429 N.W.2d 558, 559 (Iowa 1988)).

More specifically, as the Eighth Circuit Court of Appeals has explained,

> As we summarized in *Barrera [v. Con Agra, Inc.*, 244 F.3d 663 (8th Cir. 2001)],
>
>> In Iowa, an employer's ability to discharge an employee is limited when the discharge clearly violates the well-recognized and defined public policy of the state. Discharge in retaliation for filing a worker's compensation claim clearly violates Iowa's public policy. To prevail on a retaliatory discharge claim, [Melvin] must establish (1) that [s]he engaged in a protected activity; (2) that [s]he suffered an adverse employment action; and (3) that there existed a causal connection between the protected activity and [her] termination. The causation standard in a common-law retaliatory discharge case is high, however, and the employee's engagement in protected conduct must be

> the *determinative* factor in the employer's decision to
> take adverse action against the employee.

    *Id*. [at 665] (citations, quotations, and alterations omitted).

*Melvin*, 453 F.3d at 1002; *accord Napreljac v. John Q. Hammons Hotels, Inc.*, 505 F.3d 800, 803 (8th Cir. 2007) ("'The causation standard in a common-law retaliatory discharge case [under Iowa law] is high. The employee's engagement in protected conduct must be the *determinative* factor in the employer's decision to take adverse action against the employee.'" (quoting *Teachout v. Forest City Cmty. Sch. Dist.*, 584 N.W.2d 296, 301 (Iowa 1998) (citation omitted)).  Iowa cases examining claims of other kinds of discharge in violation of public policy have added, as a fourth element, that "'the employer had no overriding business justification for the discharge.'"  *See, e.g., Jones v. University of Iowa*, 836 N.W.2d 127, 144 (Iowa 2013) (quoting *Dorshkind v. Oak Park Place of Dubuque II, L.L.C.*, 835 N.W.2d 293, 300 (Iowa 2013)).

    As to the causation element, "'[a] factor is determinative if it is the reason that tips the scales decisively one way or the other, even if it is not the predominant reason behind the employer's decision.'"  *Webner v. Titan Distribution, Inc.*, 267 F.3d 828, 835 (8th Cir. 2001) (quoting *Teachout*, 584 N.W.2d at 302).  As to the effect of "temporal proximity" on proof of the causation element, the Eighth Circuit Court of Appeals has explained,

> "Under Iowa law, the fact that [Melvin] was fired after filing
> a workers' compensation claim is not alone sufficient to prove
> causation. Iowa law demands, rather, that [Melvin] produce
> evidence demonstrating that [her] workers' compensation
> claim was the determinative factor in [Car-Freshener]'s
> decision to terminate [her] employment." [*Barrera*, 244 F.3d]
> at 665-66 (citation omitted). Melvin has failed to present
> evidence demonstrating the existence of a genuine issue of
> material fact that her filing or threat of filing a workers'
> compensation claim was the determinative factor in her

> termination other than the close proximity in time between her
> injury and being placed on temporary layoff. As a matter of
> Iowa law, this is insufficient to establish a prima facie case of
> retaliatory discharge.

*Melvin*, 453 F.3d at 1002–03.

The applicable "high" causation standard also is not met where, for example, the employer provided worker's compensation benefits and accommodated the employee's injuries and workplace restrictions for several years and "thoroughly investigated" the circumstances giving rise to the basis relied upon for firing the employee. *Napreljac*, 505 F.3d at 803-04. Furthermore, where there is no evidence that the employer knew that the employee had or intended to seek worker's compensation benefits, there is no support for a retaliatory discharge claim. *Fogel v. Trustees of Iowa College*, 446 N.W.2d 451, 455 (Iowa 1989). On the other hand, a "retaliatory discharge violates public policy even if the employer does not interfere with the discharged employee's benefits." *Smith*, 464 N.W.2d at 685. Evidence sufficient to establish that the discharge was in retaliation for pursuing worker's compensation includes such things as "evidence of tardy payment of workers' compensation benefits by [the employer], disparaging comments by company officials concerning claims for workers' compensation, and the testimony of several employees that they had been harassed following their filing of workers' compensation claims," as well as "inconsistent reasons for [the employee's] discharge," and testimony of a company doctor that "he believed the company was intentionally 'slowing things down' in processing workers' compensation claims." *Clarey v. K-Products, Inc.*, 514 N.W.2d 900, 902 (Iowa 1994).

### B.     Application Of The Standards

Although I would not find for Hernandez on her claim, at least not on this summary judgment record, that is not the standard. What is more important is that I cannot find

that a rational trier of fact could find for Hernandez, even taking the record as a whole and viewing the facts in the light most favorable to her. *Torgerson*, 643 F.3d at 1042-43.

There does not appear to be any genuine dispute that Hernandez engaged in protected activity by seeking and obtaining worker's compensation benefits or that she suffered an adverse employment action, because she was fired. *See Melvin*, 453 F.3d at 1002 (first two elements of the claim). The problem, here, is that Hernandez has not generated genuine issues of material fact on the causation element under the applicable "high" standard—that the defendants' specific motivation in firing her, that is, the *determinative* factor, was her claim for worker's compensation benefits or her potential to need such benefits. *See Sanford*, 534 N.W.2d at 412 (requiring proof that the "specific motivation" for adverse action was a claim for worker's compensation benefits); *Teachout*, 584 N.W.2d at 301 (requiring that the protected conduct be the "determinative factor" in the adverse action); *accord Nepreljac*, 505 F.3d at 803 ("determinative factor"); *Melvin*, 453 F.3d 1002 ("determinative factor"); *Webner*, 267 F.3d at 835 ("determinative factor"). This is so, even without weighing the evidence or considering credibility issues. *Torgerson*, 643 F.3d at 1042 (on summary judgment, the court must not make credibility determinations or weigh the evidence).

As in *Melvin*, Hernandez tries, in the first instance, to generate the necessary genuine issue of material fact on causation on the basis of the temporal proximity between her notice of a need for surgery—hence, more worker's compensation benefits—and her termination, as well as the temporal proximity between her first discipline for a safety violation and her return to her regular job after a very long period on light duty. 453 F.3d at 1002-03. Under Iowa law, however, neither the fact that Hernandez was disciplined after a return to her regular job after a period on light duty, nor the fact that she was fired after providing notice of a further need for worker's compensation benefits,

is sufficient, alone, to prove causation. *Melvin*, 435 F.3d at 1002. Nor do I believe that a rational trier of fact could conclude that *both* adverse actions, taken together, show anything but insufficient mere proximity to worker's compensation claims, where in between the incidents, the defendants continued to provide Hernandez with worker's compensation benefits, including an additional several weeks of light duty.

Also, as in *Melvin*, Hernandez has failed to present evidence that is sufficient to generate a genuine issue of material fact that her worker's compensation claims were the determinative factor in her termination other than the asserted temporal proximity. *Id.* at 1002-03. I recognize that the fact that the defendants paid Hernandez's worker's compensation claims, including paying for her surgery in September 2015, months after she was fired, does not necessarily prove that the defendants did not violate public policy. *See Smith*, 464 N.W.2d at 685 (stating an employer can violate public policy even if it does not interfere with the discharged employee's worker's compensation benefits). Nevertheless, the fact that Hernandez's employers paid her worker's compensation benefits and the fact that they accommodated her injuries—and, indeed, accommodated her problems with maintaining an adequate pace on the band saw line before she sustained any injury—for two years, from April 2013 through April 2015, even though Hernandez was on light duty for more than half of that two-year period, belies an inference of animus toward worker's compensation claims. *See Napreljac*, 505 F.3d at 803-04.

Hernandez's dispute with the sufficiency of the "investigation" before her January 2015 suspension does not generate any genuine issues of material fact, either, because she points to no *evidence* to support that dispute, just her disagreement with the outcome. Hernandez also does *not* dispute that Ms. Peterson investigated the circumstances leading to her termination in April 2015, including interviewing Ms. Garcia, other employees present at the time of the April 2015 incident, Hernandez's supervisors and managers, and Hernandez herself. *See id.* (concluding that the causation standard was not met where

the employer continued to accommodate the employee's injury and pay worker's compensation benefits and had "thoroughly investigated" the circumstances leading to the employee's discharge); *see also Torgerson*, 643 F.3d at 1042 ("The movant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." (internal quotation marks and citations omitted)).

Furthermore, Hernandez has not pointed to evidence that, for example, the defendants made tardy payment of worker's compensation benefits, that company officials made disparaging comments concerning worker's compensation claims or gave inconsistent reasons for Hernandez's discharge or discipline, or that any other employees testified that they had been harassed following their filing of worker's compensation claims. *Compare Carey*, 514 N.W.2d at 902. Indeed, Hernandez has not attempted to rebut the defendants' assertions that no one but Ms. Peterson even knew about the recommendation that Hernandez have surgery and that no one considered Hernandez's worker's compensation claim or the status of her injury when they recommended that she be terminated. *See Fogel*, 446 N.W.2d at 455 (stating that, where there is no evidence that the employer knew that the employee had or intended to seek worker's compensation benefits, there is no support for a retaliatory discharge claim). Ms. Peterson testified that she does not recall whether or not she knew that Hernandez needed surgery at the time she made the ultimate decision to terminate Hernandez, but that leaves only an inference that she may have known and a negligible inference (essentially, no more than a "metaphysical doubt"), *Torgerson*, 643 F.3d at 1042, that she acted on that knowledge to try to forestall any further payment for Hernandez's injuries by firing her.

I disagree with the defendants' argument that the evidence of the plant nurse's supposed comment to Hernandez about waiting for Ms. Peterson to approve Hernandez's surgery is inadmissible at summary judgment. Rather, that statement is not hearsay,

because it is not offered for its truth, but to show Ms. Peterson's knowledge that Hernandez needed surgery at the time that Ms. Peterson fired Hernandez. However, the evidence concerning the statement would, at most, generate an issue of fact on Ms. Peterson's knowledge, because the defendants point out that the comment is not reflected in the nurse's contemporaneous notes, the nurse denies making it, and Hernandez did not previously reveal the supposed statement, so that it is impeachable. Although a reasonable finder of fact could find, on this and other evidence in the record, that Ms. Peterson knew about Hernandez's need for surgery at the time Ms. Peterson terminated Hernandez's employment, *knowledge* of the need for worker's compensation benefits, standing alone, is not enough to establish a retaliatory motive. The statement would not generate any genuine issue of material fact on *causation*, because, at most, it demonstrates temporal proximity between knowledge of the need for worker's compensation benefits and adverse employment action, which is not enough, standing alone, to prove causation. *Melvin*, 435 F.3d at 1002. Moreover, the alleged statement does not generate a genuine issue of material fact on causation, because Hernandez has not pointed to any evidence that Ms. Peterson, or any other employee at Curly's Foods, John Morrell, or Smithfield, could make a decision about whether or not she got surgery, but there is undisputed evidence that decision fell to ESIS, the worker's compensation administrator.

I also do not find any genuine issues of material fact that the defendants "set up" Hernandez for termination or tried to make her quit by suspending her for her first safety violation, which also prevented her from seeking a transfer for a year to another position that she could perform without pain or aggravation of her injury. Hernandez has not pointed to any evidence that she ever considered transferring to another position. Also, the defendants state that the first safety violation could have incurred dismissal, and Ms. Peterson testified that she has, in fact, fired employees for first safety violations.

While Hernandez argues that the policies at Curly's Foods did not require a suspension for her first safety violation or termination for her second safety violation, she has not pointed to any evidence that the policies forbade such disciplinary actions, so she has pointed to nothing that rebuts the defendants' contention that they simply could have fired her for the first violation. The reasonable inference from their failure to do so is one of forbearance, not animus toward worker's compensation claims.

A rational trier of fact also could not find for Hernandez on the causation element on the basis that the defendants denied her claim for healing period benefits, after her termination, but that position was rejected by the Iowa Worker's Compensation Court. Hernandez has not attempted to rebut the defendants' allegations that the denial of healing period benefits was a decision of its worker's compensation administrator, ESIS, not a decision of the defendants, nor has she attempted to rebut the defendants' allegation that the Iowa Worker's Compensation Court rejected the denial of those benefits, but that tribunal held that ESIS's denial was "fairly debatable." No reasonable inference of animus toward worker's compensation claims arises from these circumstances.

Finally, assuming for the sake of argument that Hernandez must also establish a fourth element, that the defendants had no overriding business justification for the discharge, *see, e.g., Jones*, 836 N.W.2d at 144 (stating this as an element of a claim of wrongful discharge in violation of public policy), Hernandez has pointed to next to nothing to try to raise an inference that her termination was not justified by safety violations. Again, while Hernandez argues that the determination that she violated safety procedures when she cut her finger in January 2015 was wrong, she has not pointed to evidence demonstrating that there was no basis for the defendants' determination that she did commit a safety violation. Similarly, while Hernandez argues that the policies at Curly's Foods did not require a suspension for her first safety violation or termination for her second safety violation, she has not pointed to any evidence that the policies

forbade such disciplinary actions in the circumstances presented, required any graduated discipline, or required any determination of discipline by a neutral party. Hernandez's suggestions are a very long way from evidence of procedural peculiarities that might give rise to inferences that her second safety violation was a pretext for termination that was really because of her worker's compensation claims.

Because there are no genuine issues of material fact on Hernandez's retaliation claim, and the undisputed evidence demonstrates that Hernandez was fired for the legitimate business reason that she committed two safety violations—when the first would have been enough to warrant termination, by itself—the defendants are entitled to summary judgment on Hernandez's claim.

## III. CONCLUSION

Upon the foregoing, the defendants' June 20, 2018, Motion For Summary Judgment (docket no. 28) is **granted**. Judgment in favor of the defendants shall enter accordingly.

**IT IS SO ORDERED**.

**DATED** this 27th day of August, 2018.

MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA